**DAVID H. ANGELI**, OSB No. 020244
david@angelilaw.com
**EDWARD A. PIPER**, OSB No. 141609
ed@angelilaw.com
Angeli Law Group LLC
121 SW Morrison Street, Suite 400
Portland, OR  97204
Telephone:  (503) 954-2232
Facsimile:  (503) 227-0880

Attorneys for Plaintiff Government Employees Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, a Maryland insurance company, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| v. | **(TORTIOUS INTERFERENCE WITH ECONOMIC AND CONTRACTUAL RELATIONS; DEFAMATION; DECLARATORY JUDGMENT)** |
| LEIF'S AUTO COLLISION CENTERS, LLC, an Oregon limited liability company dba LEIF'S AUTO COLLISION CENTERS, and LEIF HANSEN, an individual, | **DEMAND FOR JURY TRIAL** |
| Defendants. | **REQUEST FOR EXPEDITED DETERMINATION PURSUANT TO FED. R. CIV. P. 57** |

Plaintiff Government Employees Insurance Company, by and through its undersigned attorneys, alleges for its causes of action as follows:

PAGE 1 – COMPLAINT

## PARTIES AND JURISDICTION

1.    Plaintiff Government Employees Insurance Company ("GEICO") is a foreign corporation with its principal place of business in Chevy Chase, Maryland.  It is licensed by the Oregon Department of Consumer and Business Services to conduct business and sell insurance products in Oregon.

2.    Upon information and belief, Defendant Leif's Auto Collision Centers, LLC dba Leif's Auto Collision Centers ("Leif's") is an Oregon limited liability company with its principal place of business in Tigard, Oregon and whose members are citizens of Oregon.

3.    Defendant Leif Hansen ("Hansen") is an individual who, upon information and belief, resides in and is a citizen of Oregon.

4.    The amount in controversy in this matter exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.  Diversity jurisdiction therefore exists pursuant to 28 U.S.C. § 1332(a).

5.    This action is brought in the judicial district in which one or more Defendants reside.  Venue is therefore proper in this district pursuant to 28 U.S.C. § 1391(b)(1).  In the alternative, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this district.

## GEICO'S BUSINESS AND CLAIMS ADJUSTING PRACTICES

6.    GEICO is an insurer corporation licensed to sell automobile insurance policies to customers ("insureds") in Oregon.  GEICO sells automobile insurance policies to and maintains professional or business relationships with these insureds.

7.    GEICO's contractual relationship with its insureds at times obliges GEICO to cover all or a portion of the cost of automotive repairs incurred by the insured and/or a third-party

claimant in connection with a collision.

8.      GEICO also maintains a collective obligation to its insureds to control rates insureds must pay for automobile insurance coverage by avoiding unnecessary and inflated costs associated with collision coverage.  This includes ensuring that the cost of labor and parts appropriately reflects what is necessary for repair of collision induced damage.  Inflating the cost of collision repair in turn inflates rates of automobile insurance coverage, which also in turn threatens GEICO's business relationships with its insureds, who rely upon GEICO as a reasonably priced option for automobile insurance coverage.

9.      After an automobile accident, GEICO's insureds (or as the case may be, third-party claimants against GEICO's insurance policies) contact GEICO to report the accident.  Insureds may elect which automotive repair shop to use for vehicle repairs.

10.     Once an insured or third-party claimant selects an automotive repair shop to perform repair work on a vehicle, consistent with the terms of its insurance policies, GEICO sends a claims adjuster to the repair shop to inspect the damage on the vehicle and prepare an estimate for the repair of the vehicle in question.  The repair shop and GEICO then negotiate a repair estimate that details, among other things, the scope of repair work to be performed; the number of hours required to perform the work; and the cost of the repair work.

## BACKGROUND ON DEFENDANTS; DEFENDANTS' CONTENTIOUS RELATIONSHIP WITH INSURANCE COMPANIES AND GEICO

11.     Leif's operates as a full-service automotive repair business with locations in and around Portland, Oregon.  Hansen is the owner and founder of Leif's.[1]

12.     GEICO's insureds occasionally select Leif's as their automotive repair shop of

---

[1] Leif's and Hansen are sometimes collectively referred to as "Defendants" in this Complaint.

choice.  Leif's is not a party to GEICO's contracts or relationships with GEICO's insureds.

13.     Hansen has built his reputation and the reputation of Leif's in part by actively opposing insurance companies, including GEICO, through targeted political, legal, and advertising campaigns.  Hansen has characterized himself as an "active consumer advocate," and Leif's claims to be the "only bodyshop in Oregon that holds insurer [sic] accountable."

### LEIF'S ABUSIVE AND INTIMIDATING CONDUCT TOWARD GEICO

14.     GEICO has sent numerous claims adjusters to Leif's over the last several years to prepare vehicle repair estimates.

15.     Defendants intentionally create an atmosphere of fear and intimidation that leads to adjusters' inability to appropriately and adequately perform their work.  For example, Hansen and/or other Leif's employees routinely yell at adjusters and aggressively interrogate them with excessive questions about their personal lives and personal information.  Hansen and/or other Leif's employees routinely say to adjusters, with the purposes of instilling fear in the adjusters, that they know how to "find people."

16.     Hansen routinely threatens to sue GEICO's adjusters personally or to have them arrested for various activities, typically when adjusters attempt to negotiate estimates.

17.     Leif's employees routinely carry around knives and talk about guns.  In particular, at least one Leif's employee has talked about "killing people," with the intention of frightening the GEICO adjuster who was present.

18.     On one occasion, a Leif's employee who had gone to retrieve a vehicle for inspection by a GEICO adjuster intentionally sped up the car and then stopped only shortly before he reached the spot where the adjuster was standing.  The employee in question performed this action with the intent of harming the adjuster or causing apprehension of immediate physical harm

in the adjuster.

19.     At least one GEICO adjuster has refused to return to Leif's premises for fear of physical injury or harm.  Several GEICO adjusters have experienced significant stress and emotional harm as a result of Defendants' actions.

20.     GEICO as a result has been required to assign extra or replacement claims adjusters to enter Leif's premises to inspect damaged vehicles and prepare repair estimates.

### LEIF'S OBSTRUCTIONIST CONDUCT TOWARD GEICO

21.     In addition to the above conduct, Defendants regularly and intentionally take actions with the purpose of interfering with GEICO's adjusters' work, and that improperly affect GEICO's relationships with its insureds and claimants and have the effect of defaming GEICO.

22.     When GEICO adjusters arrive at Leif's automotive repair shop, Hansen and/or Leif's employees routinely obstruct the adjusters' access to and inspection of the vehicles.  One such means of obstruction has involved requiring adjusters to wait for excessive periods of time— up to multiple hours—for Hansen or a Leif's representative to facilitate or supervise the inspection.

23.     After this initial excessive period of delay, GEICO's adjusters are prohibited from inspecting vehicles outright; rather, they are required to go into a room that Defendants refer to as the "Shark Tank" to perform the initial adjustment of a claim without having seen the vehicle beforehand.

24.     Defendants record via audio and/or visual means all activity that occurs in the "Shark Tank."   Defendants make it known to GEICO's adjusters that all of their activity on the premises will be recorded.  Hansen and/or other Leif's employees routinely photograph adjusters during their work.

25.     In the event the adjusters are actually allowed to inspect vehicles, Defendants

routinely refuse to allow GEICO's adjusters to inspect all of the cars they are required to adjust as part of their job duties.  Rather, Defendants permit the adjusters to inspect only those vehicles that Defendants decide the adjusters will be allowed to see.

26.      On other occasions, Defendants have routinely forced GEICO's adjusters to wander around Leif's premises, which are approximately five acres in size, to find the cars the adjusters need to inspect.  Defendants refuse to tell the adjusters where the cars are located among the hundreds of cars that may be on the premises at any given time.

27.      Leif's routinely limits the days and times GEICO's adjusters can come onto the premises to inspect vehicles.  Even so, Leif's routinely and arbitrarily cuts GEICO's adjusters' visits to the premises short, before inspections are complete.

28.      In one instance, Leif's prohibited a GEICO adjuster from entering the office or speaking to any Leif's employees.  Leif's forced the adjuster to conduct business through two boxes mounted on the exterior door of the shop.  Leif's would decide which vehicle to drive out and the adjuster would write the estimate and submit it to the "Inbox," and Leif's staff would review and place it in the "Outbox."

29.      Leif's has improperly and without a reasonable basis permanently prohibited several GEICO adjusters from performing adjusting services at Leif's.

## LEIF'S FRAUDULENT AND MISLEADING CONDUCT TOWARDS GEICO AND/OR GEICO'S INSUREDS

30.      Defendants routinely and falsely or misleadingly communicate to customers that repairs to their vehicles have been delayed solely as a result of GEICO adjusters' inspection schedules or decision not to inspect a vehicle on a particular day, when in reality Leif's representatives have obstructed, delayed, and/or disrupted inspections when GEICO's adjusters have been ready, willing, and present to conduct the inspections.

31.     Defendants routinely and without a reasonable basis refuse to negotiate estimates for the cost to repair vehicles.  When some adjusters have attempted to negotiate, Defendants routinely throw adjusters off the premises.

32.     Defendants hold vehicles "hostage" and refuse to release the vehicles to the insureds unless and until GEICO agrees to pay egregious estimates for the work.

33.     Defendants falsely or misleadingly communicate to customers that GEICO is summarily refusing to pay for repairs on their vehicles when in fact GEICO has only refused to pay for excessive time to repair vehicles or unnecessary repairs.

34.     Defendants intentionally and unreasonably delay repair times for GEICO's insureds and claimants; such delays have on occasion lasted for weeks at a time.

35.     Defendants continue to engage in the conduct described above, upon information and belief.

## FIRST CLAIM FOR RELIEF

### (Tortious Interference with Economic and Contractual Relations)

36.     GEICO incorporates by reference paragraphs 1 through 35 as if fully stated herein.

37.     GEICO maintains professional, business, and/or contractual relationships with its insureds.

38.     Defendants are not parties to those professional, business, and/or contractual relationships.

39.     Through all of the above alleged improper activities and means, Defendants have intentionally interfered with GEICO's professional, business, and/or contractual relationships.

40.     Defendants' interference has caused harm to GEICO's professional, business, and/or contractual relationships, and GEICO has suffered damages as a result, including but not

limited to the following:

    a.  Lost profits in an amount to be proven at trial;

    b.  Damage to reputation and goodwill in an amount to be proven at trial;

    c.  Excess labor costs due to the assignment of additional claims personnel in an amount to be proven at trial; and

    d.  Other and further damages as determined by discovery and in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

### (Defamation)

41.    GEICO incorporates by reference paragraphs 1 through 40 as if stated herein.

42.    Defendants have made to GEICO's insureds and third-party claimants statements that falsely ascribe to GEICO characteristics, conduct, or conditions incompatible with the proper conduct of GEICO's lawful business or trade.

43.    The statements Defendants have made to GEICO's insureds and third-party claimants were false and defamatory.

44.    Based on these communications, GEICO's insureds and third-party claimants reasonably understood both that the communications were about GEICO and had meaning intending to defame GEICO.

45.    GEICO has suffered damages as a result of Defendants' defamatory communications, including but not limited to the following:

    a.  Lost profits in an amount to be proven at trial;

    b.  Damage to reputation and goodwill in an amount to be proven at trial; and

    c.  Other and further damages as determined by discovery and in an amount to be

determined at trial.

## THIRD CLAIM FOR RELIEF

### (Declaratory Judgment – 28 U.S.C. § 2201; O.R.S. § 28.010 *et seq.*)

46.     GEICO incorporates by reference paragraphs 1 through 45 as if stated herein.

47.     Oregon law provides that "[a]n insurer may not require that a particular person make the repairs to the insured's motor vehicle as a condition for recovery by the insured under a motor vehicle liability insurance policy."  O.R.S. § 746.280(1).

48.     Oregon law further provides that prior to recommending a particular automotive repair shop to an insured, an insurer must, among other things, inform the insured that he or she has "the right to select the motor vehicle repair shop of your choice."  *Id.* § 746.280(2).

49.     GEICO understands this statutory language to prohibit an insurer from refusing to do business with a particular automotive repair shop when an insured selects that automotive repair shop.

50.     Oregon law also requires employers to "furnish employment and a place of employment which are safe and healthful for employees therein"; to "furnish and use such devices and safeguards, and . . . adopt and use such practices, means, methods, operations and processes as are reasonably necessary to render such employment and place of employment safe and healthful"; and to "*do every other thing reasonably necessary to protect the life, safety and health of such employees.*"  *Id*. § 654.010 (emphasis added).

51.     An actual and justiciable controversy exists between GEICO and Leif's.  Given Defendants' above-described conduct, and particularly given the conduct described at paragraphs 15 through 19, *supra*, GEICO believes a complete cessation of commercial activity with Defendants is reasonably necessary to protect the life, safety, and/or health of GEICO's adjusters.

O.R.S. § 746.280, however, apparently precludes GEICO from ceasing commercial activity with Defendants without incurring the risk of liability.  *See id*. § 746.300 (setting forth penalties for violation of § 746.280).  The duties and obligations imposed by O.R.S. § 746.280 and O.R.S. § 654.010 thus intractably conflict as to GEICO's commercial activities with Defendants.

52.    Oregon's Declaratory Judgment Act, O.R.S. § 28.010 *et seq*., enables "[c]ourts of record within their respective jurisdictions . . . to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." *Id*. § 28.010.  "The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a judgment." *Id.*  "Any person . . . whose rights, status or other legal relations are affected by a . . . statute . . . may have determined any question of construction or validity arising under any such . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." *Id.* § 28.020.

53.    The Declaratory Judgment Act, 28 U.S.C. § 2201(a), enables courts to "declare the rights and other legal relations of any interested party seeking such declaration" where an "actual controversy" exists.

54.    Pursuant to the above-cited authorities, this Court has the authority to enter a judgment declaring that GEICO need no longer conduct commercial activity with Defendants, notwithstanding Oregon law to the contrary.

## PRAYER FOR RELIEF

WHEREFORE, GEICO prays that judgment be entered in its favor as follows:

A.    Awarding damages in an amount to be proven at trial;

B.    Preliminarily and permanently enjoining Defendants from tortuously interfering with GEICO's contracts and economic relations; from defaming GEICO; and from

engaging in harassing, intimidating, or otherwise abusive conduct toward GEICO or its employees;

C.  Entering a declaratory judgment providing that GEICO need no longer conduct commercial activity with Defendants;

D.  For costs incurred herein; and

E.  For such other and further relief as this Court deems just and proper.

## REQUEST FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), GEICO requests a trial by jury.

## REQUEST FOR EXPEDITED DETERMINATION

Pursuant to Federal Rule of Civil Procedure 57, GEICO respectfully requests a speedy hearing of its declaratory judgment claim.

DATED this 10th day of January, 2017.

Respectfully submitted,

s/David Angeli
DAVID H. ANGELI, OSB No. 020244
EDWARD A. PIPER, OSB No. 141609
(503) 954-2232

Attorneys for Plaintiff Government Employees
Insurance Company

PAGE 11 – COMPLAINT